DECISION
On January 18, 1995, relator, Denise R. Chambers, was injured in the course and scope of employment with respondent Findlay Industries ("Findlay"), a self-insured employer. Relator's claim for workers' compensation benefits was subsequently allowed for "tendonitis with cyst formation of flexor tendons of right wrist."
On June 25, 1997, relator filed a motion requesting the payment of temporary total disability ("TTD") compensation beginning May 16, 1997, and continuing, with an estimated return to work date of September 15, 1997. Relator's motion was supported by the medical report of her treating physician, Dr. Peter S. Stanos.
On August 13, 1997, a district hearing officer denied relator's request for TTD compensation, finding that relator was returned to light duty, one-handed work and that there was no evidence or change of circumstances to support relator's contention that she was unable to perform one-handed work or that such work was not available from Findlay.
By letter dated August 20, 1997, Findlay informed relator that one-handed work was available to her when she was able to return to regular duty. By letter dated August 25, 1997, Findlay again informed relator that a position within her physical capabilities was available to her. By letter dated August 28, 1997, relator requested that Findlay provide her with a copy of the job description for the one handed-work position so that she could review it with her physician. On August 28, 1997, Findlay provided relator with the requested job description, which identified the position as "quality control" and stated the following: "Visually check material being placed in compactor for recycleable material. Employee can sit or stand. Will have clipboard, placed on either shelf or table, and pencil. Will need to use one hand to make check marks with pencil on clipboard paperwork."
In a letter dated September 12, 1997, Findlay informed relator that Dr. Stanos had contacted Findlay with information regarding her physical restrictions. The letter further stated that "[a]ccording to Dr. Stanos, you can perform a job that does not involve repetitive activity, lifting no greater than 10 lbs., and no above shoulder activities," and requested that she report on September 22, 1997 in order to "make appropriate arrangements." Findlay attached a copy of Dr. Stanos's August 29, 1997 report, which set forth the restrictions noted in Findlay's letter.
On September 24, 1997, a staff hearing officer ("SHO") modified the DHO order, granting TTD compensation from May 16, 1997 through August 29, 1997. The SHO based the August 29, 1997 termination date upon a finding that Findlay had offered relator light duty work and upon Dr. Stanos' August 29, 1997 report, which indicated restrictions consistent with Findlay's light duty offer.
By order dated November 25, 1997, respondent Industrial Commission of Ohio ("commission") modified the SHO order, granting TTD compensation from May 16, 1997 through September 11, 1997. The commission's order states, in relevant part:
 The termination of temporary total compensation as of the date of 9-12-97 is based upon the employer's offer to the claimant of a light duty job. The file reflects that the self insured employer wrote the claimant on several occasions in an attempt to get her to return to work. The employer reiterated, by letter dated 8-25-97, that they have a job for her to return to within her restrictions. Again on 8-28-97, the employer informed the claimant of a one handed job and enclosed a description of this job. Lastly, by letter dated 9-12-97, the self insured employer indicates that they had been in contact with Dr. Stanos, the claimant's physician. Dr. Stanos, according to the letter, told the employer that the claimant can perform a job that does not involve repetitive activity, lifting no greater than 10 pounds, and no above the shoulder activities. The employer further requested the claimant to report so that they can make the appropriate arrangement.
 OAC 4121-3-32(B)(2)(d) provides that temporary total compensation may be terminated upon a finding by a hearing officer that the employee has received a written job offer of suitable employment. Taking all the aforementioned correspondence and OAC 4121-3-32(B)(2)(d), the Industrial Commission finds that the self insured employer made a good faith job offer to the claimant within the restrictions imposed on her by the industrial injury. Relying on the date of the last correspondence which is 9-12-97, the Industrial Commission orders that temporary total compensation be terminated as of 9-12-97.
On February 24, 1999, relator filed this original action requesting that this court issue a writ of mandamus ordering the commission to vacate its order terminating TTD compensation as of September 12, 1997 and to grant her TTD compensation from September 12, 1997 and continuing until she returns to work.
Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court, who examined the evidence and issued a decision, including findings of fact and conclusions of law. The magistrate concluded that the commission did not abuse its discretion in terminating TTD compensation as of September 12, 1997 since Findlay had, on that date, made relator a good faith offer of employment within her physical capabilities. Accordingly, the magistrate recommended that this court deny the requested writ. Relator has filed objections to the magistrate's decision. The matter is now before this court for a full, independent review.
For a writ of mandamus to issue, relator must demonstrate that she has a clear legal right to the relief sought, that the commission has a clear legal duty to provide such relief, and that she has no other adequate remedy at law. State ex rel. Berger v. McMonagle
(1983), 6 Ohio St.3d 28, 29. As noted by the Supreme Court of Ohio in State ex. rel Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649,652:
 This court employs the "some evidence" rule in determining the propriety of mandamus actions which challenge the commission's factual findings. Where the record contains some evidence to support the commission's factual conclusions, its decision will stand. Conversely, where the record contains no evidence to support the commission's order, an abuse of discretion will be found.
The payment of TTD compensation is governed by R.C. 4123.56(A), which provides in relevant part:
 * * * In the case of a self-insuring employer, [temporary total disability] payments shall be for a duration based upon the medical reports of the attending physician. If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer pursuant to division C of section 4123.511 of the Revised Code. Payments shall continue pending the determination of the matter, however payment shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to his former position, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement. * * * (Emphasis added).
Supplementing R.C. 4123.56(A), Ohio Adm. Code 4121-3-32 states, in pertinent part:
 (A) The following provisions shall apply to all claims where the date of injury or the date of disability in occupational disease claims accrued on or after August 22, 1986. The following definitions shall be applicable to this rule:
* * *
 (3) "Suitable employment" means work which is within the employee's physical capabilities.
* * *
 (6) "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the claimant's residence. If the claimant refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the claimant a written job offer at least forty-eight hours prior to initiating proceedings. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.
* * *
 (B)(2) Except as provided in paragraph (B)(1) of this rule, temporary total disability compensation may be terminated after a hearing as follows:
* * *
 (d) Upon the finding of a district hearing officer that the employee has received a written job offer of suitable employment. [Emphasis added.]
By her objections, relator argues that the commission abused its discretion in terminating TTD compensation as of September 12, 1997, as "there is no evidence in the record to support the Industrial Commission's finding that the claimant received a written job offer or an offer of suitable employment." Relator's argument is comprised of several different subarguments, which we will address in turn.
First, relator contends that she never received the September 12, 1997 letter from Findlay upon which the commission relied in terminating TTD compensation. Thus, relator argues, there is no evidence to establish that she "received" a written job offer. Although the record contains evidence, in the form of an affidavit submitted by relator with her January 13, 1998 request for reconsideration of the commission's November 25, 1997 order, in support of her allegation that she did not receive the September 12, 1997 letter, we note that the issue was never raised at either the SHO or commission hearing. Relator's failure to raise this issue before the SHO or the commission, when she had an opportunity to do so, constitutes a waiver of the issue.
Relator next contends that there is no evidence in the record to establish that she received a "job offer" from Findlay. Specifically, relator argues that the August 20, 25, and 28, 1997 letters purporting to offer her a one-handed position do not constitute job offers because the letters were written before August 29, 1997, the date her physician released her to work. Relator also argues that the September 12, 1997 letter (which she concedes was written after her physician released her to return to work), merely sets up an appointment to make appropriate arrangements and was not a job offer. We do not agree.
Findlay's August letters plainly state that a position within relator's physical capabilities was available to her when she was able to return to work. Relator was released to return to work on August 29, 1997, one day after the last August letter was written. Findlay's September 12, 1997 letter requesting her to report on September 22, 1997 was clearly in reference to "mak[ing] appropriate arrangements" for relator to return to work in the position offered in the August letters. Given this evidence, we find no abuse of discretion in the commission's finding that all of Findlay's correspondence with relator, taken in totality, demonstrated that Findlay made a good-faith job offer. It is well-established that the decision regarding the credibility and weight of evidence is within the exclusive jurisdiction of the commission. State ex rel. Hart v. Indus. Comm. (1993), 66 Ohio St.3d 95,96-97.
Finally, relator contends that there is no evidence in the record to establish that Findlay made relator an offer of "suitable employment." Specifically, relator argues that the "quality control" position offered by Findlay was not within the physical restrictions outlined by Dr. Stanos.
As previously noted, Dr. Stanos restricted relator to positions involving no repetitive or above the shoulder activities and no lifting more than ten pounds. According to the job description provided by Findlay, the "quality control" position involved only visual inspection of recyclable materials and very limited paperwork. Relator argues that the position of "quality control," in actuality, violates Dr. Stanos' restrictions because it requires an employee to complete extensive paperwork and retrieve materials weighing up to forty pounds from a three foot high bin. The only evidence in the record to support relator's contentions regarding the requirements of the "quality control" position is the affidavit she submitted with her request for reconsideration of the commission's order. The commission, as the final arbiter of the weight and credibility to be given evidence, was free to attribute little, if any weight, to relator's self-serving affidavit. Without this evidence, the only evidence before the commission was the job description itself, which, as we have previously discussed, described the position offered to relator as one well within the physical restrictions outlined by Dr. Stanos.
Based upon a thorough examination of the magistrate's decision, in addition to an independent review of the commission's order, the record, and the objections filed by relator, we find the magistrate properly determined the pertinent facts and applied the salient law to them. Accordingly, relator's objection is overruled.
Pursuant to Civ.R. 53 and Loc.R. 12(M), this court hereby adopts the magistrate's decision as its own, including the findings of fact and conclusions of law contained therein. Therefore, in accordance with the magistrate's decision, we hereby deny relator's request for a writ of mandamus.
Objection overruled; writ denied.
LAZARUS and KENNEDY, JJ., concur.