OPINIONS OF THE SUPREME COURT OF OHIO
The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State ex rel. Eberhardt, Appellee, v. Flxible Corporation
et al., Appellants.
[Cite as State ex rel. Eberhardt v. Flxible Corp. (1994),
Ohio St.3d    .]
Workers' compensation -- Application for temporary total
     disability benefits -- Physician certifies claimant as
     temporarily and totally disabled, but indicates there is
     little hope for improvement unless claimant is treated
     through rehabilitation -- Industrial Commission abuses
     discretion in denying temporary total disability benefits
     on basis that claimant has reached the maximum medical
     improvement, when -- Ambiguous opinion regarding
     claimant's medical condition later clarified by physician
     -- Commission may not revive ambiguity as basis for
     rejecting physician's opinion.
                         - - -
1.  Where an attending physician certifies a claimant as
     temporarily and totally disabled but indicates that there
     is little hope for improvement in claimant's condition
     unless treated through rehabilitation, and there is no
     other medical evidence indicating that claimant has
     reached the maximum medical improvement, it is an abuse of
     discretion for the Industrial Commission to deny temporary
     total disability benefits on the basis that claimant has
     reached the maximum medical improvement.
2.  Where a physician renders an ambiguous opinion regarding
     a claimant's medical condition but thereafter clarifies
     the ambiguity, the Industrial Commission may not revive
     the ambiguity as a basis for rejecting the physician's
     opinion.
(No. 93-705 -- Submitted April 19, 1994 -- Decided
November 9, 1994.)
Appeals from the Court of Appeals for Franklin County, No.
92AP-492.
Appellee-claimant, Carl R. Eberhardt, was injured on
January 23, 1989 while in the course of and arising out of his
employment with appellant, Flxible Corporation ("Flxible"), a
self-insured employer.  Appellant Industrial Commission of Ohio

("commission") allowed the claim for "aggravation of pre-existing low back sprain," and ordered Flxible to pay temporary total disability ("TTD") compensation. Claimant received TTD compensation for intermittent periods until he returned to his former job on August 20, 1989.

On November 2, 1990, claimant filed an application to reactivate his claim (form "C-85-A") and requested TTD benefits from October 16, 1990. On the second part of the form, claimant's attending physician, Stephen A. Yoder, certified claimant as temporarily and totally disabled from October 16, 1990 through November 18, 1990. In a physician's supplemental report (form "C-84") completed with the C-85-A, Dr. Yoder stated that "I suggested pain management program and W.C. [workers' compensation] rehab[ilitation]***." In subsequent C-84s, Dr. Yoder certified claimant as temporarily and totally disabled to an estimated date of May 1, 1991. Each C-84 contained statements on the need for a rehabilitation program.

Claimant requested, but was denied, the services of the Ohio Bureau of Workers' Compensation Rehabilitation Division, which, by letter dated December 13, 1990, informed claimant that his file was closed on the basis that he did "not meet the eligibility requirements for Rehabilitation Division services as you are not currently receiving temporary total disability."

On February 7, 1991, claimant's C-85-A application was heard by a District Hearing Officer ("DHO") who granted TTD compensation "from 10-16-90 through 4-30-91 and to continue upon submission of medical evidence." Flxible appealed and the matter was set for a hearing on August 6, 1991 before the Toledo Regional Board of Review ("TRB").

Dr. Yoder continued to file C-84s certifying claimant's TTD through September 16, 1991, and stating his recommendation for "a rehab program, but [I] understand this is being contested thru W.C." Also filed prior to the TRB hearing were Dr. Yoder's office notes containing entries from February 22, 1989 to May 10, 1991, and a report dated June 6, 1991, addressed to Flxible's representative. The report stated, in pertinent part, that:

"I have repeatedly tried to have Carl involved in W.C. rehabilitation program, which for one reason or another has neverworked out. I have reached the limits of my ability to find and correct a lesion and see only rehabilitation program, anti-inflammatory medications as the forms of treatment. I have little hope of improvement in this patient in the foreseeable future."

The TRB modified the DHO's order of February 7, 1991, finding that "claimant has reached maximum medical improvement based on Dr. Stephen A. Yoder report of June 6, 1991. Temporary total compensation is to be paid to August 5, 1991, and no further."

Claimant appealed the TRB order and the matter was set for hearing before the Staff Hearing Officers ("SHOs") on February 26, 1992. Prior to the hearing, claimant's file with the Rehabilitation Division had been reopened. Also, a report dated August 27, 1991 from Dr. Yoder addressed to claimant's lawyer was filed at the hearing. The report read:

"I feel that the statement on the letter *** dated 6/6/91 is taken out of context and I certainly will reiterate my stand

that Workers' Compensation Rehabilitation program is the primary treatment modality that I have recommended for Carl, repeatedly since 2/89. I believe there is little hope in improvement in Carl Eberhardt's back symptoms unless he is treated through the Workers' Compensation rehabilitation program. Hopefully this will clear up this matter." (Emphasis added.)

The SHO order, however, denied the claimant's appeal and affirmed the finding and order of the TRB. The order stated that "[t]his decision is also based on the office notes of Dr. Yoder. These notes plus his reports, taken in totality, show the claimant has reached maximum medical improvement."

On April 14, 1992, claimant filed a complaint in mandamus in the Court of Appeals for Franklin County alleging an abuse of discretion by the commission in denying compensation. While that action was pending, claimant was informed by letter dated June 4, 1992, from the Rehabilitation Division, that he had "successfully completed rehabilitation services and a thirty (30) day monitor period and continue[s] to work at [his] original job with [his] original employer."

The court of appeals, in a split decision, issued a writ granting TTD compensation subsequent to August 6, 1991, finding as follows:

"Dr. Yoder's position throughout his treatment was that functional change might occur if Mr. Eberhardt could be enrolled in the rehabilitation program of the Ohio Bureau of Workers' Compensation or a similar program. Dr. Yoder did not indicate within reasonable medical probabilities that no improvement would occur if such a program were to be pursued. The very fact that Dr. Yoder consistently urged Mr. Eberhardt to enter the program indicates that Dr. Yoder felt the program would in fact benefit Mr. Eberhardt. As a result, a review of Dr. Yoder's notes and reports leads to only one conclusion, namely that Dr. Yoder at all times believed Mr. Eberhardt's condition was not permanent and functional improvement could occur.

"Under the circumstances, Dr. Yoder's notes, reports and opinions do not constitute some evidence that maximum medical improvement had been achieved. ***" (Emphasis sic.)

The dissenting judge referred to Dr. Yoder's office note dated June 28, 1989, which stated that claimant "has reached maximum potential that I can get him to and have recommended rehab program." The judge concluded:

"While Dr. Yoder's suggestion regarding a rehabilitation program is plausible, it does not overcome recorded opinions that reasonably lead one to conclude the claimant has reached 'maximum medical improvement.' The record indicates there was clearly evidence before the commission to permit a conclusion that claimant was no longer entitled to temporary total disability compensation.

"In view of the status of the record, it should not be concluded the commission abused its discretion."

The cause is now before this court upon appeals as of right.

Colasurd & Colasurd and Michael D. Colasurd, for appellee.
Vorys, Sater, Seymour & Pease, Bradley K. Sinnott and

William C. Heer III, for appellant Flxible Corporation.

Lee I. Fisher, Attorney General, and William J. McDonald, Assistant Attorney General, for appellant Industrial Commission.

Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy and Marc J. Jaffy, urging affirmance for amici curiae, Ohio AFL-CIO, United Auto Workers and Ohio Academy of Trial Lawyers.

Alice Robie Resnick, J.  This court employs the "some evidence" rule in determining the propriety of mandamus actions which challenge the commission's factual findings.  Where the record contains some evidence to support the commission's factual conclusions, its decision will stand.  Conversely, where the record contains no evidence to support the commission's order, an abuse of discretion will be found.  See State ex rel. Hughes v. Goodyear Tire & Rubber Co. (1986), 26 Ohio St.3d 71, 73, 26 OBR 61, 63, 498 N.E.2d 459, 461; State ex rel. Kokocinski v. Indus Comm. (1984), 11 Ohio St.3d 186, 188, 11 OBR 499, 500-501, 464 N.E.2d 564, 566.

The final SHO order in the case sub judice found that Dr. Yoder's "[office] notes plus his reports, taken in totality, show the claimant has reached maximum medical improvement." Indeed, the only evidence cited by the commission was generated by Dr. Yoder.  The broad issue, therefore, is whether Dr. Yoder's office notes and reports, taken in totality, constitute "some evidence" that claimant has reached the maximum medical improvement.

In light of the parties' arguments, and in light of the opinions rendered in the court of appeals, it is necessary to bifurcate the issue.  We must first determine whether Dr. Yoder's August 27, 1991 report is susceptible to differing interpretations regarding the permanence of claimant's medical condition.  If it is, the matter ends there, and the commission acted within its discretion.  If it is not, we must then determine whether Dr. Yoder's June 6, 1991 report plus his office notes afford the commission some basis upon which to reject the doctor's August 27 report.

R.C. 4123.56(A) provides that TTD payments "shall not be made for the period *** when the employee has reached the maximum medical improvement."  Maximum medical improvement is equatable with the concept of permanence.  State ex rel. Youghiogheny & Ohio Coal Co. v. Kohler (1990), 55 Ohio St.3d 109, 110, 564 N.E.2d 76, 78.  It "relates solely to the perceived longevity of the condition at issue [and not to] the claimant's ability to perform the tasks involved in his former position of employment ***.  [It is defined] as a condition which will, '*** with reasonable probability, continue for an indefinite period of time without any present indication of recovery therefrom.'"  (Citation omitted.)  Vulcan Materials Co. v. Indus. Comm. (1986), 25 Ohio St.3d 31, 33, 25 OBR 26, 27, 494 N.E.2d 1125, 1127.  Thus, so long as the claimant's condition has not stabilized, and further medical improvement can be expected, TTD benefits are payable.  See 1C Larson, Workmen's Compensation Law (1992), Sections 57.12(b) and (c).

Accordingly, Ohio Adm. Code 4121-3-32(A)(1) defines "maximum medical improvement" as "a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical

probability in spite of continuing medical or rehabilitative procedures.  A claimant may need supportive treatment to maintain this level of function."

Although the syntax of Ohio Adm. Code 4121-3-32(A)(1) is less than ideal in other respects, it clearly recognizes rehabilitative procedures as a viable treatment option for effectuating fundamental change in a claimant's medical condition.  Under this provision, the question of maximum medical improvement turns on whether the proposed rehabilitative procedure is expected to improve or merely maintain the claimant's level of functionability.

In addition, the nature of the proposed rehabilitative procedure is indicative of whether or not functional improvement is expected.  As the court of appeals aptly explained in State ex rel. Matlack, Inc. v. Indus. Comm. (1991), 73 Ohio App.3d 648, 659, 598 N.E.2d 121, 128:

"For instance, in State ex rel. Copeland Corp. v. Indus. Comm. (1990), 53 Ohio St.3d 238, 559 N.E.2d 1310, the court found that the claimant had not reached MMI where a doctor opined that claimant '*** "has likely reached maximal recovery unless he attends a chronic pain and stress center which I feel might be quite helpful in dealing with the multitude of problems of which he still complains.  *** Unless additional improvement is made in a rehabilitation type program, I feel that he has likely reached maximal recovery."'  Id. at 239, 559 N.E.2d at 1311.  By contrast, in State ex rel. Miller v. Indus. Comm. (1988), 36 Ohio St.3d 58, 521 N.E.2d 775, the court found permanency in a case involving permanent sensitivity and allergy to chemicals where a doctor opined that the patient '"*** should be evaluated for rehabilitation in a field of work involving no exposure to petroleum products or other toxic chemicals. ***"'  Id. at 59, 521 N.E.2d at 777.

"Thus, there is a distinction in the case law between physical rehabilitation and occupational-type therapy related to the condition's improvement, and vocational rehabilitation or job training related to claimant's vocational improvement. The former type of rehabilitation can signify continuing possibility of medical improvement while the latter cannot."

Contrary to appellants' assertions, the statement on Dr. Yoder's August 27 report, that "there is little hope in improvement in Carl Eberhardt's back symptoms unless he is treated through the Workers' Compensation rehabilitation program," is not susceptible of differing interpretations. "Unless" means "1:  under any other circumstance than that; except on the condition that ***; 2:  without the accompanying circumstance or condition that; but that; But ***."  Webster's Third New International Dictionary (1986) 2503.  The stated purpose of the report was precisely to "clear up this matter." Further, by indicating that it is claimant's "back symptoms" which can improve if he is "treated through the Workers' Compensation rehabilitation program," Dr. Yoder made clear that the rehabilitation program "is the primary treatment modality that I have recommended ***."  The only meaning that can be ascribed to Dr. Yoder's August 27 statements, therefore, is that he was recommending physical or therapeutic rehabilitation with the expectation that it would improve the claimant's medical condition.  In order to ascribe a different meaning, it

would be necessary to revive the very ambiguity that the report clarified.

We are well aware that in State ex rel. Copeland Corp., supra, 53 Ohio St.3d at 239, 559 N.E.2d at 1311, we considered language in a medical report that bears a striking similarity to the language contained in Dr. Yoder's August 27 report and remarked that such "comments are susceptible to differing interpretations." The only issue in Copeland, however, was whether such language constituted some evidence supporting the commission's finding that claimant's condition was not yet permanent. Thus, it was only necessary to decide in Copeland whether such medical language indicated the potential for improvement in claimant's medical condition. It was not relevant or necessary to consider and decide whether such language was also susceptible to the contrary interpretation that there is no potential for improvement in claimant's medical condition. Indeed, there is no indication that we gave any serious consideration in Copeland to the issue of whether the language utilized in the medical report, standing alone, could support a finding that the claimant had reached the maximum medical improvement. Having directly considered this latter issue in this case, we conclude that Dr. Yoder's August 27 report is not subject to differing interpretations and can only be found to indicate the potential for improvement in claimant's medical condition.

We hold that where an attending physician certifies a claimant as temporarily and totally disabled but indicates that there is little hope for improvement in claimant's condition unless treated through rehabilitation, and there is no other medical evidence indicating that claimant has reached the maximum medical improvement, it is an abuse of discretion for the commission to deny TTD benefits on the basis that claimant has reached the maximum medical improvement.

The question remains, however, whether there was some other medical evidence before the commission indicating that claimant had reached the maximum medical improvement. Since the only medical evidence cited by the commission was generated by Dr. Yoder, the question becomes whether Dr. Yoder's medical statements made prior to his August 27 report afford some basis upon which the commission may reject the doctor's August 27 report.

"[I]t is the commission which determines the weight and credibility to be given to the medical reports admitted into evidence." State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18, 21, 31 OBR 70, 73, 508 N.E.2d 936, 939. Thus, it is within the commission's discretion to reject these reports as unpersuasive. State ex rel. Pavis v. Gen. Motors Corp., B.O.C. Group (1992), 65 Ohio St. 3d 30, 33, 599 N.E.2d 272, 274. Such discretion, however, is not unbounded. The commission is prohibited from arbitrarily rejecting competent medical proof. Id. Thus, there must be some reasonable basis for the commission's rejection of a physician's finding, and that basis should be placed in evidence and become part of the record. State ex rel. Hutton v. Indus. Comm. (1972), 29 Ohio St.2d 9, 13, 58 O.O.2d 66, 69, 278 N.E.2d 34, 37.

In this regard, appellants advance the following argument: "Even if one assumes that Dr. Yoder's August 27,

1991 letter to Mr. Eberhardt's attorney expresses a different opinion on maximum medical improvement than the June 6, 1991 report that Dr. Yoder had 'little hope of improvement in this patient in the foreseeable future,' Dr. Yoder's reports are still nothing better than contradictory on the subject of that opinion.  Mr. Eberhardt is the proponent of the award of compensation and bears the burden of proof on entitlement.  This court has held that contradictory or equivocal statements by the same physician cannot, as a matter of law, support an award of compensation.  State ex rel. Walters v. Indus. Comm. (1985), 20 Ohio St.3d 71 [20 OBR 402, 486 N.E.2d 94]; State ex rel. Paragon v. Indus. Comm. (1983), 5 Ohio St.3d 72 [5 OBR 127, 448 N.E.2d 1372]."

Walters and Paragon do not lead to the conclusion advanced by appellants.  A proper analysis must begin with State ex rel. Jennings v. Indus. Comm. (1982), 1 Ohio St.3d 101, 1 OBR 135, 438 N.E.2d 420.  In that case, a physician concluded in his deposition that the claimant was not fit for sustained remunerative employment and was permanently and totally disabled, a statement which was in direct conflict with his original report.  We rejected the commission's contention that the physician's deposition testimony did not detract from the probative value of the original report and held that "where a medical expert has, by deposition testimony, repudiated a conclusion previously made in a medical report, that report cannot constitute evidence to support the order of the commission."  Id. at 102, 1 OBR at 137, 438 N.E.2d at 422.

In Paragon, 5 Ohio St.3d at 75-76, 5 OBR at 130, 448 N.E.2d at 1375-1376, we observed as follows:

"Although Dr. Cullen opines that appellant is totally disabled, he then states that he is uncertain.  Dr. Cullen further indicates he does not believe appellant will ever return to work, yet he subsequently indicates that if the patient was 'motivated,' he could probably work.  However, Dr. Cullen fails to clarify what he meant by the use of the term 'motivated,' and furthermore, it is unclear from the report whether the lack of motivation is directly attributable to the depressive neurosis.  In short, Dr. Cullen's report is, at best, equivocal and, accordingly, we conclude that it does not constitute evidence upon which the commission may either grant or deny appellant's application." (Emphasis added.)

In Walters, 20 Ohio St.3d at 73-74, 20 OBR at 404, 486 N.E.2d at 96-97, we observed that:

"*** Dr. McCloud, subsequent to his medical report, changed his view concerning the effect appellant's impairment had on his employment prospects.  For example, during deposition, Dr. McCloud first agreed with Dr. King's evaluation as to appellant's total disability, then stated that appellant was not unfit for some type of gainful employment and then again specifically agreed with Dr. King's findings as to both appellant's impairment and total disability.  At worst, Dr. McCloud contradicted himself; at best, his conclusion that appellant was not totally disabled was equivocal.

"This court faced a strikingly similar situation in [Paragon]. *** We held that such an equivocal report 'does not constitute evidence upon which the commission may either grant or deny appellant's application' for permanent total disability

benefits.  Id. at 76 [5 OBR at 130, 448 N.E.2d at 1376].  See [Jennings].

"In the instant case *** [t]he apparent uncertainty in Dr. McCloud's position gives the commission an insufficient basis to support its order denying appellant permanent total disability benefits."

The rule that emerges from the foregoing is that equivocal medical opinions are not evidence.  See, also, State ex rel. Woodard v. Frigidaire Div., Gen. Motors Corp. (1985), 18 Ohio St.3d 110, 113, 18 OBR 143, 145, 480 N.E.2d 403, 406; Kokocinski, supra, 11 Ohio St.3d at 188-189, 11 OBR at 501, 464 N.E.2d at 566.  Such opinions are of no probative value.  Further, equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement.  Ambiguous statements, however, are considered equivocal only while they are unclarified.  Paragon, supra.  Thus, once clarified, such statements fall outside the boundaries of Jennings, supra, and its progeny.

Moreover, ambiguous statements are inherently different from those that are repudiated, contradictory or uncertain.  Repudiated, contradictory or uncertain statements reveal that the doctor is not sure what he means and, therefore, they are inherently unreliable.  Such statements relate to the doctor's position on a critical issue.  Ambiguous statements, however, merely reveal that the doctor did not effectively convey what he meant and, therefore, they are not inherently unreliable.  Such statements do not relate to the doctor's position, but to his communication skills.  If we were to hold that clarified statements, because previously ambiguous, are subject to Jennings or to commission rejection, we would effectively allow the commission to put words into a doctor's mouth or, worse, discount a truly probative opinion.  Under such a view, any doctor's opinion could be disregarded merely because he failed on a single occasion to employ precise terminology.  In a word, once an ambiguity, always an ambiguity.  This court cannot countenance such an exclusion of probative evidence.

In the present case, Dr. Yoder's August 27 report does not express a different opinion as to whether claimant had reached the maximum medical improvement than was expressed in his June 6 report or his office notes.  Each statement made prior to August 27, 1991 which appellants describe as contradictory indicates that Dr. Yoder had exhausted the treatment procedures at his disposal and recommended outside rehabilitative procedures.  Nowhere did the doctor indicate that claimant's condition was stabilized or static, that he had a poor chance of improvement, nor did the doctor ever use any other language suggesting maximum medical improvement without also recommending rehabilitation.  Each time Dr. Yoder stated a prognosis, he did so in conjunction with a recommendation for rehabilitation.  What Dr. Yoder failed to do was state whether he expected the rehabilitation to improve the claimant's condition, or to state whether he was recommending physical or vocational rehabilitation.  Such ambiguities were clarified in his August 27 report.

Thus, Dr. Yoder's statements previous to August 27, 1991 cannot serve as a basis for rejecting his opinion.  Where a

physician clarifies an ambiguity in stating his opinion, the Industrial Commission may not revive the ambiguity in order to reject that physician's opinion.  There was no evidence, therefore, supporting the commission's finding that claimant had reached the maximum medical improvement.

For the reasons set forth above, the judgment of the court of appeals is hereby affirmed.

Judgment affirmed.

A.W. Sweeney, Douglas and F.E. Sweeney, JJ., concur.

Moyer, C.J., Wright and Pfeifer, JJ., dissent.

Wright, J., dissenting.    This court must uphold a finding of the Industrial Commission when that finding is supported by "some evidence."  State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936.  The documented lack of improvement in the claimant's medical condition after two and a half years of treatment is in itself some evidence supporting the commission's finding of maximum medical improvement.  Additionally, the treating physician's June 6, 1991 report can be interpreted as supporting the commission's finding.  Even if the report can only be interpreted to support a temporary total disability finding, the commission could still have properly reached the maximum medical improvement result.  Consequently, the commission's finding is supported by some evidence and therefore should stand.

The claimant's medical condition did not improve during the two and a half years he was under Dr. Yoder's care.  Nearly two months after the claimant first came to Dr. Yoder, Dr. Yoder wrote that the claimant's "back pain is unchanged."  Over two months later he wrote, "I feel [the claimant] has reached maximum potential that I can get him to and have recommended rehab program."  During this time, another doctor, Dr. Hill, also treated Mr. Eberhardt.  Dr. Hill also was unable to help the claimant.  Over two years later, on June 6, 1991, Dr. Yoder made a recommendation for rehabilitation in his report: "I have repeatedly tried to have [the claimant] involved in W.C. rehabilitation program, which for one reason or another has never worked out.  I have reached the limits of my ability to find and correct a lesion and see only rehabilitation program, anti-inflammatory medications as the forms of treatment.  I have little hope of improvement in this patient in the forseeable [sic] future."  (Emphasis added.)

The majority incorrectly concludes that Dr. Yoder's June 6, 1991 report can only be interpreted to support a finding of temporary total disability.  In State ex rel. Copeland Corp. v. Indus. Comm. (1990), 53 Ohio St.3d 238, 559 N.E.2d 1310, this court unanimously held that a report very similar to the one made by Dr. Yoder was "susceptible to differing interpretations."  Id. at 238, 559 N.E.2d at 1311.  The doctor in Copeland wrote: "I feel that he [claimant] has likely reached maximal recovery unless he attends a chronic pain and stress center which I feel might be quite helpful in dealing with the multitude of problems of which he still complains. ***  Unless additional improvement is made in a rehabilitation type program, I feel that he has likely reached maximal recovery."  Id..  In Copeland, we held that the commission made a plausible interpretation of the doctor's report -- that the claimant had

not reached maximum medical improvement.  We expressly noted that another interpretation was also plausible.  The fact that the report was open to differing interpretations was not troubling, however, because it was sufficient that a plausible, thouth not necessarily the best, interpretation supported the finding of the commission.

The majority makes a vain attempt to distinguish this case from Copeland.  The two doctors' reports are in substance identical.  The majority's justification for its determination that the report in this case is susceptible to only one interpretation -- supporting temporary total disability -- is, at best, unconvincing.  It is plain from the face of the opinion in Copeland that we found that report susceptible to more than one interpretation.  One plausible interpretation was that the claimant had not yet reached maximum medical improvement.  The only other possible, "differing" interpretation was that the claimant had reached maximum medical improvement.

Interpreting Dr. Yoder's report to support a finding of maximum medical improvement is even more plausible in this case than in Copeland.  First, the claimant in this case showed no signs of improvement from the beginning to the end of his treatment.  Second, unlike the doctor in Copeland, Dr. Yoder's report did not discuss the nature of the recommended rehabilitation program or the likelihood that the program would aid the claimant.  Instead, Dr. Yoder's report that he was not able to do anything more for the patient but prescribe anti-inflammatory medication and recommend rehabilitation is on its face susceptible to an interpretation that these were merely final gasps of a treatment regimen that had failed to produce results.  Consequently, a reasonable interpretation of Dr. Yoder's statements is that the claimant had reached maximum medical improvement and that should be the end of this matter.

The majority's reasoning is in direct conflict with the regulations of the Industrial Commission.  The decision today holds, in effect, that even where a claimant has made no medical improvement over an extended period of time, there is no evidence to support a finding of maximum medical improvement if a doctor suggests rehabilitation.  In short, the mere suggestion that rehabilitation may be helpful, without any evidence regarding the likelihood of recovery or the nature of the rehabilitative program, is sufficient to preclude a finding of maximum medical improvement.  As discussed above, the result reached by the majority is at war with our decision in Copeland. It is also contrary to Ohio Adm. Code 4121-3-32(A)(1).  That regulation provides that a claimant's enrollment or proposed enrollment in rehabilitation will preclude a finding of maximum medical improvement only if a "fundamental functional or physiological change can be expected within reasonable medical probability ***."  In this case, Dr. Yoder merely recommended rehabilitation.  He failed to opine that a change in the claimant's condition could be "expected within reasonable medical probability."  In fact, Dr. Yoder gave no opinion as to the likely positive impact of the rehabilitation program on the claimant's condition.  Dr. Yoder's August 27, 1991 letter, upon which the claimant and the majority rely so heavily, only indicates that the claimant

would not improve without rehabilitation.  Dr. Yoder does not state that the claimant's condition would improve with rehabilitation.

Even if Dr. Yoder's report can be interpreted to support only a finding of temporary disability, the fact that the claimant made no improvement in over two years of treatment independently qualifies as "some evidence" supporting the maximum medical improvement finding.  The majority is correct when it finds that the rehabilitation recommendation is not in conflict with Dr. Yoder's statements that the claimant's condition is not otherwise expected to improve.  Looking at the issue from only that angle, however, misses how the commission could have properly arrived at the maximum medical improvement finding.

The commission could have arrived at its decision after weighing the evidence of no medical improvement against the recommendation of rehabilitation.  The majority barely touches on an important part of our jurisprudence: the decision regarding the credibility and weight of evidence is within the exclusive jurisdiction of the commission.  State ex rel. Hart v. Indus. Comm. (1993), 66 Ohio St.3d 95, 609 N.E.2d 166.  The power to weigh evidence includes the power to weigh different items of evidence differently, as well as the power to assign different weight to portions of a single witness's testimony. In this case, the commission could have determined that the documented lack of medical success by Dr. Yoder was compelling proof that the claimant had reached maximum medical improvement.  The rehabilitation recommendation would not have been ignored, but merely would have received less weight in the decisionmaking process.  As we discussed in State ex rel. Pavis v. Gen. Motors Corp. (1992), 65 Ohio St.3d 30, 33, 599 N.E.2d 272, 274, "Where a key question is left unanswered, the commission is entitled to conclude that the medical report's persuasiveness is either diminished or negated."  Therefore, the commission could have properly given the recommendation less weight, because the treating physician did not explain the nature of the rehabilitation program or its chances of improving the claimant's condition.

Because there is a proper way the commission could have arrived at its finding of maximum medical improvement, the commission did not abuse its discretion.  Consequently, I would hold that, where a claimant has made no medical improvement in two and a half years of treatment, a commission finding of maximum medical improvement is supported by some evidence. Additionally, I would hold that a doctor's mere recommendation of rehabilitation, without evidence of a reasonable medical probability that rehabilitation would improve the claimant's condition, is insufficient to overcome a finding of maximum medical improvement where that finding is otherwise supported by some evidence.

Therefore, I respectfully dissent.

Moyer, C.J., and Pfeifer, J., concur in the foregoing dissenting opinion.