IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION DECISION
Relator, Catherine L. Winfrey, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for permanent total disability ("PTD") compensation and to enter an order finding that she is permanently and totally disabled.
This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision. However, relator has failed to state any reasons whatsoever for her objections and does not give any indication as to how the magistrate's reasoning was flawed. We agree with the magistrate that the vocational expert, Lynn Kaufman's, vocational report was not internally inconsistent and constituted some evidence upon which the commission could rely.
After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
BOWMAN and PETREE, JJ., concur.
 IN MANDAMUS
In this original action, relator, Cathern L. Winfrey, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation and to enter an order granting said compensation.
Findings of Fact:
1. On July 1, 1988, relator sustained an industrial injury while employed with the Geauga County Board of Elections. Her industrial claim is allowed for: "Tear rotator cuff/right" and is assigned claim No. PEL72331.
2. On January 4, 2000, relator filed an application for PTD compensation. Under the "work history" section of the application, the PTD applicant is asked to provide information about his/her work history. On the application, relator listed three jobs she had performed. Her application indicates that she was a "Customer Greeter" at "Super K-Mart" during 1994-1995. The "Customer Greeter" position was part-time.
Her application indicates that she was a "clerk" for the "Geauga County Board of Elections" during the period 1984-1990. This job is also listed as part-time.
Her application also indicates that she was "Mayor Council" for "Aqilla Village" during 1980-1981.
Relator describes her job duties as a "Customer Greeter":
 I greeted customers, handed out flyers, gave shopping carts to customers helped customers locate items in the store and watched for shop lifters[.]
Relator describes her job duties as a "clerk":
 General office work, recruited poll workers, answered phones, updated voting records, cleaned and stored outdated files, poll workers training-all work done was physical and manually[.]
3. On August 30, 2000, relator was examined by commission specialist and physiatrist, John Nemunaitis, M.D. In his report, Dr. Nemunaitis describes his understanding of relator's prior employment as follows:
 * * * [H]er job required repetitive use of her right arm and hand. It resulted by 7/1/87 the claimant had considerable difficulty in using the arm. She continued to work until 1995 when she stated that she was unable to do parts of her job requiring the use of shoulder, such as washing windows. Therefore, she was no long[er] able to work after 1995.
4. Dr. Nemunaitis concludes:
 The claimant is not able to perform any of [her] former positions of employment.
 The claimant is able to perform sustained remunerative work activity minimally at a sedentary capacity as it relates to the allowed conditions based under examination today.
5. The commission requested an Employability Assessment Report from Lynn Kaufman, a vocational expert. The Kaufman report, dated October 18, 2000, responds to the query:
 Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, immediately and/or following appropriate academic remediation.
Indicating acceptance of Dr. Nemunaitis' report and responding to the above query, Kaufman wrote:
 Very limited sedentary: surveillance system monitor, information clerk, election clerk.
Part III of Kaufman's report is captioned "Effects of Other Employability Factors." Under Part III, Kaufman wrote:
 Dr. Nemunaitis' functional capacity profile would meet the DOT profile for election clerk but generally this is a very part-time and seasonal position with minimal earnings. * * *
Kaufman's report further states:
B. WORK HISTORY:
STRENGTH
JOB TITLE SKILL LEVEL LEVEL DATES
1) Hostess Semi-skilled Light 1994-1995
2) Administrative Semi-skilled Light 1984-1990
Clerk
 3) Mayor/Council Skilled Sedentary 1980-1981
Member (City
Manager)
6. Relator's PTD application was heard by a Staff Hearing Officer ("SHO") on February 8, 2001. The hearing was recorded and transcribed for the record. During the hearing, relator testified that the "Customer Greeter" job sometimes required her to "scrub the floor and wash the windows." (Stipulated Record [SR] 36.)
During the February 8, 2001 hearing, relator's counsel contended that the Kaufman report was "fatally defective" because allegedly Kaufman's listing of "election clerk" as an employment option is a reference to relator's former position of employment with the Geauga County Board of Elections, a position that Dr. Nemunaitis found that she cannot return to. (SR 45.)
During the hearing, relator testified as to the distinction between an election day "poll worker" and her former position with the Geauga County Board of Elections. Relator testified that while she had sometimes been a "poll worker," that was not her former position of employment. (SR 26, 31-32.)
During the hearing, the hearing officer indicated at one point that he believed Kaufman's reference to "election clerk" was not a reference to relator's former position of employment. (SR 39.) Relator's counsel suggested that Kaufman "is confusing the term of `poll worker' and `election clerk' and using them synonymously." (SR 72).
During the hearing, employer's counsel argued that Kaufman had characterized the former position of employment as an "administrative clerk" and thus, "election clerk" was not a reference to the former position of employment. (SR 73).
Thereafter, the following exchange occurred between relator's counsel and the hearing officer:
 [RELATOR'S COUNSEL]: Okay. Using that type of deductive reasoning, then Ms. Kaufman is using the word "election clerk" and "poll worker" synonymously.
HEARING OFFICER: We don't know that. We don't know that.
 [RELATOR'S COUNSEL]: At any point, we're left with a very difficult problem. We don't know what Ms. Kaufman is saying then.
7. Following the February 8, 2001 hearing, the SHO issued an order denying relator's PTD application. The SHO's order states:
 All evidence on file and adduced at hearing was reviewed and considered. This order is based upon the medical report(s) of Dr. Nemunaitis and the vocational and employability assessment(s) of Lynne Kaufman.
 Claimant is a seventy year old former board of elections employee who has one industrial claim under consideration. Claimant had worked a number of years for the Geauga County Board of Elections on a part-time basis for a few months each year. At hearing, she testified that at one point she worked full-time for eight to nine months one year. Claimant's prior work history includes serving as a council person and mayor over a two year period in the early 1980s. Her mayoral duties included supervising six to eight persons including a volunteer police department and a building inspector.
 Claimant wrote a 01/29/1991 letter to the Geauga County Board of Elections retiring indicating that her shoulder injury prevented her from performing her position. Claimant was sixty years old at the time that she wrote that letter. Claimant stayed home, was not undergoing active therapy and did not seek other employment until she became a greeter for K-Mart in approximately 1994. This again was a part-time position as were all of claimant's previous jobs since she was in her early twenties (other than the eight month full-time period previously noted above).
 The Staff Hearing Officer notes that Dr. Posch in his 11/29/1999 report indicated that claimant would be capable of sedentary work which did not involve any sort of lifting or repetitive use of the right arm. Industrial Commission Specialist Dr. Nemunaitis indicated in his 09/05/2000 report that claimant is able to work at a sedentary work capacity and she could function at waist or desk level.
 Employability Assessor Lynne Kaufman noted some of the positions that claimant could perform which were within the limitations imposed by Dr. Nemunaitis. These positions included surveillance system monitor, information clerk and election clerk. Ms. Kaufman indicated that claimant's limited education (eleventh grade) is adequate for many entry level jobs. Ms. Kaufman also stated that claimant's work history has previously included sedentary work. According to Ms. Kaufman, claimant's adjusted workers trait profile includes average numerical aptitude, motor coordination and finger dexterity levels. Claimant rates at above average levels in general learning ability, verbal aptitude and clerical perception.
 The Staff Hearing Officer adopts the conclusions of Dr. Nemunaitis and Ms. Kaufman and finds that claimant is capable of functioning at a sedentary level. Claimant did not work on a full-time basis for most of her career and the weight of the evidence on file supports the conclusion that she could work at a sedentary position on a part-time basis.
 The Staff Hearing Officer notes that claimant is now seventy years old and her age considerably limits her employment options. When she left the Geauga County Board of Elections in 1991 she was only sixty years old. Since 1991, claimant never attempted to become involved in a rehabilitation program and did not actively undergo treatment until 1996. Claimant had a shoulder surgery in January 1997 and the 11/05/1997 office records of Dr. Posch indicated that claimant had pain but a full range of motion, stable post-op and a reasonably good result. Other than the above noted K-Mart employment, claimant has not attempted to work either before or after the 1997 surgery from 1991 to the present. Claimant's work history as a council person and mayor shows interpersonal skills and administrative abilities. The Staff Hearing Officer finds that the major negative factor involved with this claim has been the passage of time with no attempt on claimant's part to find a position within her physical restrictions.
 Based upon all of the above, the Staff Hearing Officer finds that the allowed condition in this claim does not prevent claimant from returning to sustained remunerative employment and, therefore, her application for permanent and total disability compensation is denied.
8. On September 4, 2001, relator, Cathern L. Winfrey, filed this mandamus action.
Conclusions of Law:
The sole issue is whether the Kaufman vocational report is some evidence upon which the commission can rely to deny relator's PTD application.
Finding that the Kaufman report is some evidence upon which the commission can rely, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
It has been held that a medical report can be so internally inconsistent that it cannot constitute some evidence upon which the commission can rely. State ex rel. Lopez v. Indus. Comm. (1994),69 Ohio St.3d 445; State ex rel. Taylor v. Indus. Comm. (1995),71 Ohio St.3d 582. It has been held that equivocal medical opinions are not evidence. State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649, 657. Equivocation occurs when a doctor renders contradictory, uncertain or ambiguous opinions. Id. Presumably, those legal propositions are applicable to vocational reports as well.
In the magistrate's view, it is reasonably clear from a reading of the Kaufman report that Kaufman characterized the former position of employment as that of "administrative clerk" under the Dictionary of Occupational Titles ("DOT"). This is clearly set forth in the presentation of "work history." There is no reason to suspect that Kaufman's listing of "election clerk" as an employment option is a reference to the former position of employment. However, there is reason to believe that "election clerk" is not truly a third employment option because that position is, as Kaufman indicates, a very part-time and seasonal position with minimal earnings. Whether or not Kaufman would agree with relator's contention that a "poll worker" is an alternative description for "election clerk" need not concern us here. Clearly, the "election clerk" employment option is not an example of sustained remunerative employment even if it is clear that relator can perform the job.
That Kaufman listed "election clerk" as an employment option and then indicated that "election clerk" is a very part-time and seasonal position with minimal earnings, does not destroy the evidentiary value of Kaufman's report because two other employment options remain, that of "surveillance system monitor" and "information clerk." While it would seem to be the better practice to not list "election clerk" as an employment option in the first place, the report is reasonably clear that "election clerk" is a job relator can perform but it may not rise to the level of sustained remunerative employment. The magistrate notes that, while the Ohio Supreme Court has indicated part-time work can be sustained remunerative employment, presumably not all part-time work would qualify as sustained remunerative employment. See State ex rel. Toth v. Indus. Comm. (1997), 80 Ohio St.3d 360.
In short, contrary to relator's suggestion, Kaufman did not state or suggest that relator could perform her former position of employment, a position that Dr. Nemunaitis found that she could not return to. Kaufman simply pointed out that relator could perform a job that cannot be viewed as providing sustained remunerative employment. Thus, Kaufman's report is not equivocal nor internally inconsistent. It clearly constitutes some evidence upon which the commission can rely.
Relator seems to further suggest that any uncertainty on the part of the hearing officer at the hearing must translate into elimination of the Kaufman report. That is, relator suggests that the Kaufman report is somehow cloaked with whatever uncertainty the hearing officer expressed about the report at the hearing. Relator's suggestion lacks merit.
The hearing officer was not bound by any statements he made at the hearing that could be viewed as uncertainty. The very purpose of the hearing is to air the issues to be resolved in the written decision to follow. Presumably, any uncertainty about the report expressed by the hearing officer at the hearing was thereafter resolved when he issued his written decision.
Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
/S/ Kenneth W. Macke