DECISION
{¶ 1} Relator, Columbia-Csa/Hs Greater Canton Area System, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its award of permanent total disability compensation to respondent Peter J. Renfrew, and to enter an order denying said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (See Attached Appendix A.) In his decision, the magistrate concluded the report of Ned A. Nafziger, M.D., is ambiguous and does not constitute some evidence upon which the commission can rely. Accordingly, the magistrate determined a writ of mandamus should issue.
 {¶ 3} Respondents Renfrew and the commission have filed objections to the magistrate's conclusions of law, largely rearguing the issues adequately addressed and properly determined in the magistrate's decision. As the magistrate noted, the commission relied on the report of Dr. Nafziger, who stated "[f]or the most part, Mr. Renfrew's examination was unreliable secondary to multiple symptom magnification behaviors which were noted at the time of this assessment." (Magistrate Decision, ¶ 14.) He nonetheless concludes that "[b]ased upon current examination, I do not believe that the patient is capable of returning to work at any level at this point in time. Based upon his past history and current examination, I believe that he will not be able to participate in any gainful employment in the future." Id. at ¶ 16.
 {¶ 4} While the commission and Renfrew suggest various explanations for the ambiguity in Dr. Nafziger's report, those explanations do not eliminate the ambiguity. The magistrate appropriately determined the matter should be returned to the commission, where the parties will have the opportunity to obtain a clarification of Dr. Nafziger's report. Accordingly, the objections to the magistrate's decision are overruled.
 {¶ 5} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order granting respondent Renfrew permanent total disability compensation, to permit the parties to obtain a clarification of Dr. Nafziger's report, and to thereafter enter an amended order adjudicating the permanent total disability application.
Objections overruled; writ granted.
PETREE, P.J., and LAZARUS, J., concur.
 DECISION IN MANDAMUS {¶ 6} In this original action, relator, Columbia-Csa/Hs Greater Canton Area System ("Columbia"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of permanent total disability ("PTD") compensation to respondent Peter J. Renfrew ("claimant") and to enter an order denying said compensation.
Findings of Fact:
 {¶ 7} 1. On March 11, 1994, claimant sustained an industrial injury when he slipped and fell on a patch of ice while walking through his employer's parking lot. On the date of injury, claimant was employed as a mental health therapist or counselor. The industrial claim is allowed for: "Herniated disc L4-5; lumbar radiculopathy; major depressive disorder; pain disorder associated with both psychological factors and a general medical condition; foraminal stenosis at L4-5; spinal and foraminal stenosis at L5-S1 by aggravation," and is assigned claim number 94-450367.
 {¶ 8} 2. On February 27, 2001, claimant was examined at Columbia's request by Ned A. Nafziger, M.D. Dr. Nafziger issued a five-page narrative report which states in part:
 {¶ 9} "EXAMINATION: The patient is a well-developed man who appears to be in moderate distress with transverse in ambulation. He transfers from a sitting to standing position very slowly and tends to maintain a forward flexed position of the trunk with ambulation. He ambulates with decreased trunk rotation. Blood pressure is 150/94, weight is 199 lbs, and pulse is [illegible]. Examination of the lumbar spine reveals iliac crest symmetrical in height. He has a well-healed central lumbar incision. With superficial palpation, the patient complains of pain, otherwise, the patient demonstrates approximately three other signs of symptom magnification behaviors. With attempts of forward flexion, the patient is not able to forward flex more than 5 degrees. I see no evidence of any extension with request for extension. With rotation of the bilateral hips, the patient complains of increased lumbar pain. No muscle atrophy is noted involving the bilateral lower extremities. Neurological examination reveals deep tendon reflexes graded 2/4 at the bilateral patellar and Achilles' tendons. Myofomal testing with give way weakness in the bilateral lower extremities. Dermatomal testing with reported decreased sensation at the left foot diffusely. The patient reports pain at approximately 10 degrees with straight leg raising bilaterally rendering these tests, nonreliable.
 {¶ 10} "IMPRESSION: Chronic low back pain syndrome associated with past L4/L5 disc herniation. The patient now with evidence of multiple small broad-based lumbar disc herniations at L2/L3, and L3/L4 levels. In addition, there is evidence of possible recurrent disc herniation at the L4/L5 and the L5/S1 levels. There is diffuse degenerative discs and lumbar spondylosis present. No evidence of associated motor radiculopathy are identified.
 {¶ 11} "In regards to the patient's diagnosis of major depressive disorder, he cried approximately three times during this assessment. Based upon his subjective history, he still appears to be depressed. In addition, the patient's claim is allowed for aggravation of foraminal stenosis at the L4/L5 level.
 {¶ 12} "I have been able to review Mr. Renfrew's medical records, and these records appear to be complete at this point in time.
 {¶ 13} "In regards to questions posed by Gateway Management Services:
 {¶ 14} "Question #1: For the most part, Mr. Renfrew's examination was unreliable secondary to multiple symptom magnification behaviors which were noted at the time of this assessment. From an objective standpoint, I did note that his lower extremity reflexes were intact and I did not notice any evidence of lower extremity atrophy. I would recommend an EMG with nerve conduction velocity studies of the bilateral lower extremities at this point in time to evaluate for any evidence of underlying neuropathic changes. However, based upon this examination, I am not able to objectively document these. The patient does have a history of depression and he appears to be severely depressed at this point in time, however, I would recommend a repeat psychological evaluation concerning the extent of this depression and its limitations.
 {¶ 15} "* * *
 {¶ 16} "Question #3: Based upon current examination, I do not believe that the patient is capable of returning to work at any level at this point in time. Based upon his past history and current examination, I believe that he will not be able to participate in any gainful employment in the future."
 {¶ 17} 3. Dr. Nafziger also completed a "Physical Capacity Checklist" form on which he responded "No" to the query "Employee can work 8 hours per day?"
 {¶ 18} 4. On April 4, 2001, relator filed an application for PTD compensation. In support, relator submitted the February 27, 2001 report of Dr. Nafziger.
 {¶ 19} 5. On September 20, 2001, relator was examined by commission specialist Robin G. Stanko, M.D., who specializes in physical medicine and rehabilitation. Dr. Stanko reported:
 {¶ 20} "* * * Based on the AMA Guides to the Evaluation of Permanent Impairment, Fourth Edition, in my opinion, the impairments of the claimant place him DRE lumbosacral category V, using Table 70 (page 108); giving him a permanent impairment of 25% whole person for his musculoskeletal impairments. I feel the claimant could perform activity at sedentary work levels, that is lifting up to 10 lb."
 {¶ 21} 6. Dr. Stanko also completed a "Physical Strength Rating" form on which he indicated that relator is medically able to perform sedentary work.
 {¶ 22} 7. On September 20, 2001, relator was examined by commission specialist and psychiatrist Donald L. Brown, M.D., who reported:
 {¶ 23} "In my opinion, Mr. Renfrew has reached MMI with respect to his previously allowed major depressive disorder and pain disorder associated with both psychological factors and a general medical condition. I believe they can be considered permanent. Utilizing the Fourth Edition of the AMA Guides to the Determination of Permanent Impairment, I would rate him as having a Class III level of impairment. This is a moderate level of impairment. Referencing the percentages from the second edition in the fourth edition, I would rate his level of impairment at 40%."
 {¶ 24} 8. Dr. Brown also completed an occupational activity assessment ("OAA") form. The OAA form poses the following two-fold query to the examining doctor:
 {¶ 25} "Based on the impairment resulting from the allowed/alleged psychiatric/-psychological condition(s) only, can this claimant meet the basic mental/behavioral demands required:
 {¶ 26} "[1] To return to any former position of employment?
 {¶ 27} "[2] To perform any sustained remunerative employment?"
 {¶ 28} Dr. Brown responded "yes" to both queries.
 {¶ 29} 9. The commission requested an employability assessment report from Robert E. Breslin, a vocational expert. The Breslin report, dated November 21, 2001, responds to the following query:
 {¶ 30} "Based on your separate consideration of reviewed medical and psycho-logical opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or (B) following appropriate academic remediation, or brief skill training."
 {¶ 31} Indicating acceptance of the reports of Drs. Brown and Stanko, and responding to the above query, Breslin listed immediate employment options as "Counselor; Administrator, Mental Health Aide."
 {¶ 32} 10. In further support of his PTD application, claimant submitted a vocational report, dated December 7, 2001, from Daniel Simone. Simone opined "Mr. Renfrew has experienced a total inability to perform substantial gainful activity on a sustained basis."
 {¶ 33} 11. Following a February 5, 2002 hearing, a staff hearing officer ("SHO") issued an order awarding PTD compensation effective February 27, 2001, the date of Dr. Nafziger's examination and report. The SHO's order states:
 {¶ 34} "This order is based particularly upon the report of Dr. Nafziger.
 {¶ 35} "The claimant is 47 years old, has a college education, and a work history as a professional therapist. He underwent major low back surgery in October of 1994.
 {¶ 36} "The employer's physiatric [sic] specialist Dr. Nafziger has indicated that the claimant is not capable of returning to any level of work at this time, and will not be able to participate in any gainful employment in the future. Dr. Nafziger did not attribute this conclusion to the presence of any factors or conditions unrelated to the currently allowed conditions on the claim. Based on the conclusion of Dr. Nafziger it is found that the claimant is permanently precluded from returning to any type of sustained remunerative employment based solely on the impairment arising from the allowed conditions. As such, and pursuant to State ex rel. Speelman v. I.C. (1993), 73 O.App.3d 757, there is no need to discuss or analyze the claimant's non-medical disability factors."
 {¶ 37} 12. On June 25, 2002, relator filed this mandamus action.
Conclusions of Law:
 {¶ 38} The main issue is whether the report of Dr. Nafziger constitutes some evidence upon which the commission can rely to support its finding that the medical impairment resulting from the allowed conditions of the claim prohibits all sustained remunerative employment without reference to the vocational factors.
 {¶ 39} The magistrate finds that the report of Dr. Nafziger does not constitute some evidence upon which the commission can rely. Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 40} Ohio Adm. Code 4121-3-34(D) sets forth the commission's guidelines for the adjudication of PTD applications. Ohio Adm. Code4121-3-34(D)(2)(a) states:
 {¶ 41} "If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the claimant's return to his former position of employment as well as prohibits the claimant from performing any sustained remunerative employment, the claimant shall be found to be permanently and totally disabled, without reference to the vocational factors * * *."
 {¶ 42} In State ex rel. Speelman v. Indus. Comm. (1992),73 Ohio App.3d 757, 762, this court set forth "several scenarios" to guide the commission in its adjudication of PTD applications. This court stated:
 {¶ 43} "* * * If there is some evidence upon which the commission specifically relies that a claimant is medically unable not only to return to his former position of employment but to perform any sustained remunerative employment, all as a result of the allowed condition, it is unnecessary that the commission look at any further factors, such as Stephenson [State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167] factors, and an order allowing permanent total disability compensation should be entered. State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood (1991), 60 Ohio St.3d 38,573 N.E.2d 60."
 {¶ 44} Here, the commission relied exclusively upon the report of Dr. Nafziger as the some evidence supporting its determination that the medical impairment resulting from the allowed conditions of the claim prohibits all sustained remunerative employment and thus entitles claimant to PTD compensation.
 {¶ 45} Relator challenges the report of Dr. Nafziger, claiming that it cannot constitute some evidence because it is internally inconsistent and equivocal. The magistrate agrees that Dr. Nafziger's report is equivocal and on that basis cannot constitute some evidence upon which the commission can rely.
 {¶ 46} In State ex rel. Lopez v. Indus. Comm. (1994),69 Ohio St.3d 445, 449, the Supreme Court of Ohio affirmed this court's judgment that a writ of mandamus issue to the commission. The commission had denied the PTD application of Mr. Lopez based upon the medical report of Dr. Katz. Finding that the commission could not rely upon Dr. Katz's report, the Lopez court explained:
 {¶ 47} "Claimant argues that the `equivocal' nature of Katz's report bars its consideration under State ex rel. Paragon v. Indus. Comm. (1983), 5 Ohio St.3d 72, 5 OBR 127, 448 N.E.2d 1372. We disagree with the characterization of Katz's report as `equivocal.' The disputed report by Dr. Cullin in Paragon alternately stated that claimant could and could not work. Katz, on the other hand, offers only one opinion on claimant's ability to work.
 {¶ 48} "Katz's report, however, while unequivocal, is so internally inconsistent that it cannot be `some evidence' supporting the commission's decision. Despite `normal' physical findings, Katz assessed a high (fifty percent) degree of impairment. He then, however, concluded that claimant could perform heavy foundry labor. Being unable to reconcile these seeming contradictions, we find that the report is not `some evidence' on which to predicate a denial of permanent total disability compensation."
 {¶ 49} The Lopez court further found that removing the Katz report from further evidentiary consideration did not compel an award of PTD. The court viewed a report from Dr. Seltzer noting that, while it is flawed and cannot alone sustain a PTD award, it does suggest the possibility of some degree of impairment attributable to the allowed conditions which could combine with Mr. Lopez's non-medical disability factors to produce PTD. Accordingly, the Lopez court remanded the matter to the commission for an amended order.
 {¶ 50} Equivocal medical opinions are not evidence. State ex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id. Ambiguous statements, however, are considered equivocal only while they are unclarifed. Id. The Eberhardt court stated:
 {¶ 51} "* * * [A]mbiguous statements are inherently different from those that are repudiated, contradictory or uncertain. Repudiated, contradictory or uncertain statements reveal that the doctor is not sure what he means and, therefore, they are inherently unreliable. Such statements relate to the doctor's position on a critical issue. Ambiguous statements, however, merely reveal that the doctor did not effectively convey what he meant and, therefore, they are not inherently unreliable. Such statements do not relate to the doctor's position, but to his communication skills. If we were to hold that clarified statements, because previously ambiguous, are subject to Jennings [State ex rel. Jennings v. Indus. Comm. (1982), 1 Ohio St.3d 101] or to commission rejection, we would effectively allow the commission to put words into a doctor's mouth or, worse, discount a truly probative opinion. Under such a view, any doctor's opinion could be disregarded merely because he failed on a single occasion to employ precise terminology. In a word, once an ambiguity, always an ambiguity. This court cannot countenance such an exclusion of probative evidence."
 {¶ 52} In his report, Dr. Nafziger states that "[f]or the most part, Mr. Renfrew's examination was unreliable secondary to multiple symptom magnification behaviors which were noted at the time of this assessment." Thereafter, Dr. Nafziger opines:
 {¶ 53} "* * * Based upon current examination, I do not believe that the patient is capable of returning to work at any level at this point in time. Based upon his past history and current examination, I believe that he will not be able to participate in any gainful employment in the future."
 {¶ 54} As relator argues herein, if the examination, for the most part, is unreliable, it would seem to follow that the medical opinion based upon that examination is also unreliable. This ambiguity remains unclarified. Dr. Nafziger has not been asked to explain or clarify his opinion by any party.
 {¶ 55} The magistrate disagrees with relator's characterization of Dr. Nafziger's report as being internally inconsistent under the Lopez standard. Dr. Nafziger did not alternately state that claimant could and could not work. Dr. Nafziger offered only one opinion, i.e., that claimant is unable to work now and in the future. See Lopez, supra.
 {¶ 56} Because Dr. Nafziger's medical opinion is ambiguous, but not internally inconsistent, it could conceivably become some evidence if the ambiguity were clarified.
 {¶ 57} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order granting claimant PTD compensation, to permit the parties to obtain a clarification of Dr. Nafziger's report, and to thereafter enter an amended order adjudicating the PTD application.