DECISION
{¶ 1} Relator, Kenneth Sears, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation. Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate found that Dr. Brown's report was not some evidence upon which the commission could rely because the report was internally inconsistent. Therefore, the magistrate recommended that this court issue a writ of mandamus ordering the commission to vacate its order denying relator's PTD application, to remove Dr. Brown's report from further evidentiary consideration, and to issue a new order either granting or denying relator's PTD application.
 {¶ 2} No objections have been filed to the magistrate's decision.
 {¶ 3} Finding no error or other defect on the face of the decision of the magistrate, pursuant to Civ.R. 53(C), we adopt the decision of the magistrate as our own including the findings of fact and conclusions of law contained therein. In accordance with the recommendation of the magistrate, the requested writ of mandamus is granted ordering respondent to vacate its order denying relator's PTD application, to remove Dr. Brown's report from further evidentiary consideration, and to issue a new order either granting or denying relator's PTD application.
Writ of mandamus granted.
Bowman and Petree, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT State of Ohio ex rel. : Kenneth Sears, : Relator, : v. : No. 03AP-820 H. Dennert Distributing Corp. and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on March 23, 2004 James A. Whittaker, LLC, and James A. Whittaker, for relator.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 4} In this original action, relator, Kenneth Sears, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
Findings of Fact:
 {¶ 5} 1. On October 12, 1981, relator sustained an industrial injury while employed as a truck driver. The industrial claim is allowed for: "lumbar radiculopathy; major depression," and is assigned claim number 81-29779.
 {¶ 6} 2. On November 16, 2000, relator filed an application for PTD compensation. In support, relator submitted a report, dated April 14, 2000, from R. Stuart Kravetz, M.D. Dr. Kravetz's report states:
Mr. Sears sought psychiatric treatment for his depression with the Hartford Psychiatric Group beginning initially 4-24-91 with James Hartford, M.D., and myself as the providing therapist. There have been a number of changes of physicians throughout his treatment. However, I have continued to be a supportive counselor to Mr. Sears during this time. There have been periods of time when his participation has been intermittent because of a variety of reasons. His compliance with taking psychotrophic medica-tions to ease his depression has been inconsistent.
Mr. Sears [exhibits] numerous subjective symptoms of depression, including severe chronic fatigue, a depressed mood," nervousness," feelings of guilt and failure, middle and late insomnia, severe constriction of energy, activity and interests and severe social withdrawal. He continues to spend most of his days lying on the couch, sometimes watching TV. He describes his pain as constant and he walks aided with a cane. Pain causes sleep disturbances with frequent waking to change positions. He currently does not drive himself to his appointments.
Mr. Sears remains totally disabled from all work and most activity by virtue of the severity of his emotional illness secondary to chronic pain and disability as a result of his industrial injury of October 12, 1981.
In the light of his failure to respond to psychotherapy and numerous psychotropic medications over an extended period, I believe with reasonable medical certainty, that Mr. Sears is permanently totally disabled and has reached Maximum Medical Improvement.
 {¶ 7} 3. On May 11, 2001, relator was examined by Ron Koppenhoefer, M.D., on behalf of the commission. Dr. Koppenhoefer wrote:
Based on the condition of lumbar radiculopathy and taking into effect the objective medical findings, Mr. Sears is capable of performing work activity. I believe he could perform sedentary work activity and light work as defined by the Industrial Commission when taking into effect the allowed conditions in this claim.
 {¶ 8} 4. On May 18, 2001, relator was examined by psychiatrist Donald L. Brown, M.D., on behalf of the commission. Dr. Brown wrote:
DISCUSSION:
Mr. Sears indicates that he functioned normally up until the time of his injury. He has since then had chronic pain and over a period of 20 yrs. has become increasingly isolated to the point that he does very little. I believe he's accurate in his observation that with all of this time to sit around and think that he has become more focused upon his pain and in response to this has become bored, more helpless and dependent. I agree with Dr. Eggerman's comments that the major thing contributing to his depression and current lifestyle is the lack of structure. I do not believe that in a strict sense his allowed major depression would prevent him from returning to his former position of employment or other forms of sustained remunerative employment but in the practical sense he does not present today as a good candidate for employment. I believe that Dr. Kravetz can provide both psychotherapy and medication management that probably would be sufficient for the claimant's needs though the final decision needs to be made by him as to whether or not he should continue with his therapist.
OPINION:
In my opinion, Mr. Sears has reached MMI with respect to his previously allowed major depression and can be considered permanent. Utilizing the Fourth Edition of the AMA Guides to the Determination of Permanent Impairment, I'd rate him as having a Class III level of impairment and believe his impairment would best correspond with a high moderate level of impairment.
 {¶ 9} 5. On May 18, 2001, Dr. Brown completed an occupational activity assessment form. Dr. Brown responded in the affirmative to the following two part query:
* * * Based on the impairment resulting from the allowed/-alleged psychiatric/psychological condition(s) only, can this claimant meet the basic mental/behavioral demands required:
[One] To return to any former position of employment?
[Two] To perform any sustained remunerative employment?
 {¶ 10} 6. The commission requested an employability assessment report from Anthony Stead, a vocational expert. The Stead report, dated July 5, 2001, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations that arise from the allowed condition(s), identify occupations that the claimant may reasonably be expected to perform, (A) immediately and/or, (B) following appropriate remedial education or brief skill training.
 {¶ 11} Indicating acceptance of Dr. Koppenhoefer's reports and responding to the above query, Stead listed the following employment options:
[A] Deliver, outside; coach driver; light delivery; fork-lift operator; machine tender; machine feeder.
[B] dispatcher; security guard.
 {¶ 12} Indicating acceptance of Dr. Brown's report and responding to the above query, Stead indicated that the employment options were the same as for Dr. Koppenhoefer's report.
 {¶ 13} The Stead report further states:
III EFFECTS OF OTHER EMPLOYABILITY FACTORS
[One] Question:
How, if at all, do the claimant's age, education, work history or other factors (physical psychological and sociological) affect his/her ability to meet basic demands of entry-level occupations?
Answer:
Age: 54. At this age, he should retain the ability to learn new skills and adapt to new environments. I would not consider his age a barrier to re-employment.
Education: 8th grade. This level of education should be sufficient for entry-level unskilled tasks. I would not consider his education a significant barrier to re-employment.
Work History: The claimant's work history is mostly driving with other unskilled work. It would not readily transfer to lighter conditions and should be considered a negative factor for re-employment purposes.
[Two] Question:
Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry-level Sedentary or Light jobs?
Answer:
There is nothing to indicate that the claimant could not benefit from a structured vocational rehabilitation program designed at skill enhancement and re-employment.
(Emphasis omitted.)
 {¶ 14} 7. Following a November 21, 2001 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
The claimant was examined by Dr. Koppenhoefer at the request of the Industrial Commission with respect to the allowed orthopedic conditions in the claim. Dr. Koppenhoefer opined that the claimant has reached maximum medical improvement considering the allowed conditions in the claim, and has a 10% whole person impairment considering the allowed conditions. Dr. Koppenhoefer attached a physical strength rating form to his medical report wherein he opined that the claimant is capable of performing sedentary and light-duty employment considering the allowed conditions.
The claimant was evaluated by Dr. Brown at the request of the Industrial Commission with respect to the allowed psychological condition in the claim. Dr. Brown opined that the claimant's allowed psychological condition would not prevent him from returning to his former position of employment or other forms of sustained remunerative employment. He further opined that the claimant's lack of structure in his current lifestyle is the major contributing factor to his depression. Dr. Brown characterized the claimant's level of impairment due to the allowed psychological condition as a Class III level of impairment which he stated is a high moderate level of impairment. However, Dr. Brown indicated on the Occupational Activity Assessment Form attached to his medical report that the allowed psychological condition does not prevent the claimant from returning to his former position of employment or from performing any other form of sustained remunerative employment.
An employability assessment of the claimant was performed by Mr. Stead at the request of the Industrial Commission. Considering the residual functional capacities as expressed by Dr. Koppenhoefer and Dr. Brown, Mr. Stead opined that the claimant has the following employment options: outside deliverer, coach driver, light deliverer, fork-lift operator, machine tender, and machine feeder. Following appropriate remedial education or brief skill training, Mr. Stead opined that the claimant would have the additional employment options of dispatcher and security guard. Mr. Stead noted the claimant's age of 54 and stated he is categorized as a middle-aged person. Mr. Stead opined that at such age, the claimant should retain the ability to learn new skills and adapt to new environments. Mr. Stead opined that the claimant's age is not a barrier to re-employment. He further noted the claimant's 8th [grade] education and stated that he is classified as having a limited education. Mr. Stead opined that this level of education should be sufficient for performing entry-level unskilled tasks. Mr. Stead opined that the claimant's education is not a significant barrier to re-employment. Mr. Stead further analyzed the claimant's work history and noted that he has performed mostly driving and other unskilled work. Mr. Stead opined that the claimant's work experience does not readily transfer to lighter employment conditions and is a negative factor for re-employment purposes. Finally, Mr. Stead opined that there is no indication that the claimant would not benefit from a structured vocational rehabilitation program designed at skill enhancement and re-employment.
The Staff Hearing Officer finds that the claimant is unable to return to his former position of employment as a truck driver and laborer as a result of the allowed physical conditions in the claim. The Staff Hearing Officer further finds that the claimant is able to perform sedentary and light-duty occupations within the restrictions noted by Dr. Koppenhoefer. The Staff Hearing Officer further finds that the claimant would benefit from a structured vocational rehabilitation program designed at re-employment. The Staff Hearing Officer further finds that the claimant's age of 54 is not a barrier to re-employment. The Staff Hearing Officer finds that at such age, the claimant would be capable of adapting to new work rules, processes, procedures and tools. The Staff Hearing Officer further finds that the claimant's 8th grade education would be sufficient for performing entry-level unskilled tasks and is not a barrier to re-employment. The Staff Hearing Officer further finds that the claimant's work history did not provide him with transferable skills to lighter occupations and is a negative factor for re-employment purposes. Considering the claimant's age, education, and work experience in conjunction with his capabilities and limitations due to the allowed orthopedic and psychological conditions, the Staff Hearing Officer finds that the claimant is able to perform the employment options noted in the vocational report of Mr. Stead, such as: outside deliverer, coach driver, light deliverer, fork-lift operator, machine tender, and machine feeder. The Staff Hearing Officer further finds that the claimant would be a good candidate to participate in brief skill training to qualify to perform the additional employment options of dispatcher and security guard. Accordingly, the Staff Hearing Officer finds that the claimant is able to engage in sustained remunerative employment.
This order is based on the medical reports of Dr. Koppenhoefer and Dr. Brown and the vocational report of Mr. Stead.
 {¶ 15} 8. On August 15, 2003, relator, Kenneth Sears, filed this mandamus action.
Conclusions of Law:
 {¶ 16} The issue is whether Dr. Brown's report is some evidence upon which the commission can rely. Finding that Dr. Brown's report is not some evidence upon which the commission can rely, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 17} Equivocal medical opinions are not evidence. State exrel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier report, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id.
 {¶ 18} Moreover, a medical report can be so internally inconsistent that it cannot be some evidence supporting a commission decision. State ex rel. Lopez v. Indus. Comm.
(1994), 69 Ohio St.3d 445; State ex rel. Taylor v. Indus. Comm.
(1995), 71 Ohio St.3d 582.
 {¶ 19} In his narrative report, Dr. Brown opines:
I do not believe that in a strict sense his allowed major depression would prevent him from returning to his former position of employment or other forms of sustained remunerative employment but in the practical sense he does not present today as a good candidate for employment.
 {¶ 20} Dr. Brown does not tell us what he means by "in a strict sense" and "in a practical sense," although the meaning of those terms means all the difference to Dr. Brown's ultimate conclusion on relator's ability to work. It is certainly not obvious to this magistrate what those terms mean to Dr. Brown.
 {¶ 21} Here, respondent commission asserts that the uncertainty of the above-quoted sentence is remedied by the next sentence:
I believe that Dr. Kravetz can provide both psychotherapy and medication management that probably would be sufficient for the claimant's needs though the final decision needs to be made by him as to whether or not he should continue with his therapist.
 {¶ 22} According to the commission "[i]f Sears received `psychotherapy and medication' he would be a good candidate." (Respondent's brief at 7.)
 {¶ 23} The problem with the commission's argument is that, in the next sentence of Dr. Brown's report, he opines that the major depression has reached maximum medical improvement ("MMI").
 {¶ 24} Obviously, if the major depression has reached MMI, the condition cannot be substantially improved by psychotherapy and medication. Thus, the commission's suggested reading of the passage conflicts with Dr. Brown's opinion on MMI.
 {¶ 25} In short, Dr. Brown's report is not some evidence that relator can return to his former position of employment or other forms of sustained remunerative employment. Consequently, the commission's finding in that regard is unsupported.
 {¶ 26} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's PTD application, to remove Dr. Brown's report from further evidentiary consideration, and to issue a new order either granting or denying relator's PTD application.
 /s/ Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE