DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Edward Herfel, has requested a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate found that the commission abused its discretion in determining relator's residual medical capacity, and denying relator's request for PTD. Therefore, the magistrate recommended that this court issue a writ of mandamus ordering respondent to vacate its staff hearing officer's ("SHO") order of November 6, 2001, and after eliminating Dr. Lester's medical opinions from further evidentiary consideration, enter a new order that adjudicates relator's PTD application. Both relator and the commission have filed objections to the magistrate's decision.
 {¶ 3} On December 30, 1954, relator sustained an industrial injury, which is allowed for "low back, clarified — radiculopathy and chronic severe lumbosacral strain/sprain." On March 7, 2000, relator filed an application for PTD compensation. Relator was examined by Dr. William J. Lester on behalf of the commission. Dr. Lester opined that relator had a five percent whole person impairment, could not work as a truck driver, and could not perform any remunerative work activity. Dr. Lester also completed an occupational activity assessment form. On the assessment form, Dr. Lester indicated that relator can sit "3-5 HRS," stand "3-5 HRS," walk "0-3 HRS," and he can lift or carry up to ten pounds for "0-3 HRS."
 {¶ 4} Because of the discrepancy in Dr. Lester's report, a commission claims examiner wrote to Dr. Lester asking for clarification. In response, Dr. Lester wrote that he had made an error "on statement." Relator's counsel deposed Dr. Lester. The commission held a hearing on November 6, 2001. After the hearing an SHO issued an order denying the PTD application. This mandamus action followed.
 {¶ 5} The magistrate found that Dr. Lester's testimony was equivocal as to whether relator retained the medical ability to perform sustained remunerative employment. As stated in the magistrate's decision, equivocal medical opinions are not evidence. State ex rel. Eberhardt v.Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement.
 {¶ 6} The commission argues that Dr. Lester's testimony is not equivocal, as Dr. Lester never testified that relator could not work. Rather, Dr. Lester testified that relator could work, but with restrictions. It is the commission's opinion that the commission is the exclusive evaluator of disability, specifically when it comes to nonmedical or vocational factors. State ex rel. Jackson v. Indus. Comm.
(1997), 79 Ohio St.3d 266. The commission argues that Dr. Lester included in his testimony, and the magistrate improperly considered, Dr. Lester's opinion and speculation as to the non-medical and vocational aspects of job-market conditions for individuals with relator's restrictions. We have reviewed Dr. Lester's deposition testimony, and upon such review, we agree with the magistrate and find that Dr. Lester's testimony is equivocal.
 {¶ 7} In Dr. Lester's original report, he opined:
Based on Mr. Herfel's past history, physical examination, and the AMAGuides to Permanent Impairment, 4th Edition, 1993, Mr. Herfel has a 5% whole person impairment, Chapter 3, page 110, Table 72, DRE Lumbar Spine Impairment, equals a 5% whole person impairment.
* * *
* * * Mr. Herfel cannot work as a truck driver at this time.
* * *
* * * Mr. Herfel cannot perform any remunerative work activity at this time.
 {¶ 8} On the same day, Dr. Lester completed an occupational activity assessment form, which provided for the claimant's capability in certain physical activities. On this form, Dr. Lester indicated that relator can sit "3-5 HRS," stand "3-5 HRS," and walk "0-3 HRS." He can lift or carry up to ten pounds "0-3 HRS." A commission claims examiner wrote to Dr. Lester as follows:
In your report you gave an [sic] 5% impairment and the claimant['s] ability to sit and stand up to 3-5 hrs. per day, but he could not perform remunerative work activity at this time.
Would you please explain your reasoning of why the claimant cannot work with such low impairment [and] give your opinion in answering the following questions only considering the allowed conditions not the claimant's age.
* * *
Can the claimant perform any sustained remunerative work activity?
In response to the above query from the claims examiner, Dr. Lester wrote: "yes It was an error — on statement —."
 {¶ 9} At his deposition when asked to explain the discrepancy, the following exchange occurred:
[Relator's counsel] * * * [B]ecause the first time you did say he couldn't do sustained remunerative employment, you checked no on the form you filled out. Then the Industrial Commission sent you a letter and you wrote back and said it was in error, and I do want to explore that with you a little bit what you're thinking was. I think what you're telling me is this man is very, very limited, and as a practical matter it's going to be very difficult for him to work; is that true?
[Dr. Lester] Yes, exactly. * * * So I think that's the clarification I tried to make with, yes, he could pursue, you know, but it's a very, very limited small category type of thing where he could actually do anything like that, and I think that's the correction. You know, logically, you know, would a gentleman with these limitations be able to find something, that's very, very hard unless, you know, you have a brother that maybe owns a company and sets you up on something or, you know, Wal-Mart greeter or, you know, a special circumstance of doing certain things. But as far as really going out there and pursuing this open job market even based upon sedentary work would be very, very difficult for them to pursue.
During the deposition, the following exchange occurred:
[Relator's counsel] That's what I'm wondering, given his back condition, would he be able to actually physically work on a consistent basis rather than just here and there. I was wondering if that was what you were thinking of in your report.
[Dr. Lester] Well, I think that was part of the reasoning that went into that initial not really checking off really not and, you know, you think, well, sedentary type of work, again, could he, you know, possibly pursue it within a certain category and certain things and, you know, and doing that, but practically I think it would be very, very difficult for him to go out there and work, you know, 40 hours a week, you know, on a regular basis.
[Relator's counsel] It would result in pain that he eventually just couldn't do it; is that what would happen?
[Dr. Lester] Yes. I mean, I think he would have a difficult time of really sustaining an activity and stuff.
The final question of the deposition and Dr. Lester's response is as follows:
[Relator's counsel] Doctor, I guess just to go back to the discrepancy between the first report where you said he couldn't do remunerative work and then the addendum that you've issued, as I understand what you're saying is as a practical matter, given his allotted conditions, it would be very unlikely that he could do any work, but that there might — but under some sort of some certain limited circumstances, you didn't want to rule that out; is that basically what you're saying?
[Dr. Lester] That's correct.
 {¶ 10} While we agree with the commission that there are some areas of Dr. Lester's testimony where it appears he is bordering on giving an opinion relating to the vocational aspects of relator's employability, we find that there are areas of uncertainty and ambiguity in Dr. Lester's testimony regarding relator's impairment. For example, while Dr. Lester opines that relator can do some work, his testimony includes phrases like, "I mean, I think he would have a difficult time of really sustaining an activity and stuff." Further, Dr. Lester agrees with relator's counsel when he states that "it would be very unlikely that [relator] could do any work."
 {¶ 11} Because this court agrees that the commission abused its discretion in determining relator's residual medical capacity, we overrule the commission's objections to the magistrate's decision.
 {¶ 12} Relator agrees with the magistrate that Dr. Lester's testimony is equivocal; however, relator objects to the magistrate's recommendation to remand this cause back to the commission for consideration without Dr. Lester's testimony. Relator argues that there is no need to remand this cause back to the commission because to do so would be an act of futility. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. In Gay,
the Supreme Court of Ohio held that where the facts of the case indicate that there is a substantial likelihood that a claimant is totally disabled, courts are not precluded from ordering the Industrial Commission, in a mandamus action, to award permanent total disability benefits notwithstanding the some-evidence rule. However, "Gay relief was intended as a narrow exception to the general rule of returningNoll-deficient orders to the commission." State ex rel. Pass v. Indus.Comm. (1996), 74 Ohio St.3d 373, 376. Gay relief is to be issued only in "extraordinary circumstances." Id. We do not find that Gay relief is warranted in this case as relator's medical and non-medical profile does not present the one-sidedness necessary to warrant such extraordinary relief. See State ex rel. Corona v. Indus. Comm. (1998), 81 Ohio St.3d 587. Accordingly, we overrule relator's objections.
 {¶ 13} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant a limited writ of mandamus ordering the commission to vacate its SHO's order of November 6, 2001, that denied relator's PTD application, and after eliminating Dr. Lester's medical opinions from further evidentiary consideration, enter a new order that adjudicates the PTD application.
Objections overruled; limited writ granted.
Klatt and French, JJ., concur
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Edward Herfel, :
 Relator, :
v. : No. 04AP-627
 :
Ryder Truck Lines, Inc. and :
Industrial Commission of Ohio, : (REGULAR CALENDAR)
 Respondents. :

 MAGISTRATE'S DECISION Rendered on November 23, 2004 Butkovich, Schimpf, Schimpf Ginocchio Co., L.P.A., Joseph A.Butkovich and Robert E. Hof, for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
IN MANDAMUS
 {¶ 14} In this original action, relator, Edward Herfel, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 15} 1. On December 30, 1954, relator sustained an industrial injury which is allowed for "low back, clarified — radiculopathy and chronic severe lumbosacral strain/sprain," and is assigned claim number 2-350023.
 {¶ 16} 2. On March 7, 2000, relator filed an application for PTD compensation.
 {¶ 17} 3. On November 17, 2000, relator was examined by William J. Lester, M.D., on behalf of the commission. In his report, dated November 17, 2000, Dr. Lester opined:
Based on Mr. Herfel's past history, physical examination, and the AMAGuides to Permanent Impairment, 4th Edition, 1993, Mr. Herfel has a 5% whole person impairment, Chapter 3, page 110, Table 72, DRE Lumbar Spine Impairment, equals a 5% whole person impairment.
* * *
* * * Mr. Herfel cannot work as a truck driver at this time.
* * *
* * * Mr. Herfel cannot perform any remunerative work activity at this time.
 {¶ 18} 4. On November 17, 2000, Dr. Lester also completed an occupational activity assessment form. The form asks the examining physician to indicate by checkmark the claimant's capability in certain physical activities. The time indicated may be made up of interrupted periods of occupational activity throughout the day. On the form, Dr. Lester indicated that relator can sit "3-5 HRS," stand "3-5 HRS," and walk "0-3 HRS." He can lift or carry up to ten pounds "0-3 HRS."
 {¶ 19} 5. On December 15, 2000, a commission claims examiner wrote to Dr. Lester:
In your report you gave an [sic] 5% impairment and the claimant['s] ability to sit and stand up to 3-5 hrs. per day, but he could not perform remunerative work activity at this time.
Would you please explain your reasoning of why the claimant cannot work with such low impairment [and] give your opinion in answering the following questions only considering the allowed conditions not the claimant's age.
* * *
Can the claimant perform any sustained remunerative work activity?
In response to the above query from the claims examiner, Dr. Lester wrote: "yes It was an error — on statement —."
 {¶ 20} 6. On August 24, 2000, relator's counsel deposed Dr. Lester.
 {¶ 21} 7. During the deposition, Dr. Lester was asked by relator's counsel to explain his December 15, 2000 addendum. The following exchange occurred:
[Relator's counsel] * * * [B]ecause the first time you did say he couldn't do sustained remunerative employment, you checked no on the form you filled out. Then the Industrial Commission sent you a letter and you wrote back and said it was in error, and I do want to explore that with you a little bit what you're thinking was. I think what you're telling me is this man is very, very limited, and as a practical matter it's going to be very difficult for him to work; is that true?
[Dr. Lester] Yes, exactly. * * * So I think that's the clarification I tried to make with, yes, he could pursue, you know, but it's a very, very limited small category type of thing where he could actually do anything like that, and I think that's the correction. You know, logically, you know, would a gentleman with these limitations be able to find something, that's very, very hard unless, you know, you have a brother that maybe owns a company and sets you up on something or, you know, Wal-Mart greeter or, you know, a special circumstance of doing certain things. But as far as really going out there and pursuing this open job market even based upon sedentary work would be very, very difficult for them to pursue.
During the deposition, the following exchange occurred:
[Relator's counsel] That's what I'm wondering, given his back condition, would he be able to actually physically work on a consistent basis rather than just here and there. I was wondering if that was what you were thinking of in your report.
[Dr. Lester] Well, I think that was part of the reasoning that went into that initial not really checking off really not and, you know, you think, well, sedentary type of work, again, could he, you know, possibly pursue it within a certain category and certain things and, you know, and doing that, but practically I think it would be very, very difficult for him to go out there and work, you know, 40 hours a week, you know, on a regular basis.
[Relator's counsel] It would result in pain that he eventually just couldn't do it; is that what would happen?
[Dr. Lester] Yes. I mean, I think he would have a difficult time of really sustaining an activity and stuff.
The final question of the deposition and Dr. Lester's response is as follows:
[Relator's counsel] Doctor, I guess just to go back to the discrepancy between the first report where you said he couldn't do remunerative work and then the addendum that you've issued, as I understand what you're saying is as a practical matter, given his allotted conditions, it would be very unlikely that he could do any work, but that there might — but under some sort of some certain limited circumstances, you didn't want to rule that out; is that basically what you're saying?
[Dr. Lester] That's correct.
 {¶ 22} 8. Following a November 6, 2001 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order indicates that the commission exclusively relied upon Dr. Lester's medical opinions to establish relator's residual functional capacity at the sedentary level. The SHO's order addresses Dr. Lester's opinions as follows:
Dr. Lester, a physical Medicine physician, examined the claimant of [sic] 11/17/2000 regarding the permanent total issue. Based on his examination findings, Dr. Lester concluded that the claimant has a 5% permanent partial impairment and remains capable of sedentary work activity with restrictions against climbing stairs and ladders, crouching, stooping, bending, kneeling, reaching below knee level and the requirement of a sit/stand option. (On 12/15/2000 he notes that the restrictions he notes on the Occupational Activity Assessment form are correct and the statement in the narrative report that the [sic] cannot work was an error in dictation). Based on the reports and deposition of Dr. Lester, which are found persuasive, the Staff Hearing Officer finds that when only the impairment arising from the allowed claim is considered, the claimant has the residual capacity to perform sedentary work within the restrictions noted by Dr. Lester. (While Dr. Lester states in the deposition that it may be difficult, he never states that the claimant physically cannot work at all when considering only the allowed conditions and not other things such as claimant's age. He concludes that the claimant can work under limited circumstances. This would appear to be consistent with the restrictions he gives which, when considered in light of the total range of work from sedentary to heavy, would be limited circumstances).
 {¶ 23} 9. On June 21, 2004, relator, Edward Herfel, filed this mandamus action.
Conclusions of Law:
 {¶ 24} Because Dr. Lester is equivocal as to whether relator retains the medical ability to perform sustained remunerative employment, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 25} Equivocal medical opinions are not evidence. State ex rel.Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement.
 {¶ 26} Ambiguous statements, however, are considered equivocal only while they are unclarified. Id.
 {¶ 27} Dr. Lester's deposition testimony generated contradictory or uncertain medical opinions that cannot be clarified.
 {¶ 28} Prior to his deposition, Dr. Lester had indicated in his December 15, 2000 addendum that relator can perform sustained remunerative employment. In his occupational activity assessment, Dr. Lester indicated that relator could perform sedentary employment. (Relator can sit from "3-5 HRS" during a day; he can stand for "3-5 HRS" during the day; and he can lift or carry up to ten pounds.)
 {¶ 29} Dr. Lester's deposition testimony contradicted the pre-deposition opinion that relator is medically able to perform sustained remunerative employment of a sedentary nature. The deposition testimony indicates that Dr. Lester is uncertain that relator can perform any sustained remunerative employment of a sedentary nature.
 {¶ 30} During his deposition, Dr. Lester agreed with relator's counsel that "as a practical matter it's going to be very difficult for him to work."
 {¶ 31} Later, in his own words, referring to someone with relator's restrictions, Dr. Lester stated "even based upon sedentary work would be very, very difficult for them to pursue."
 {¶ 32} At another point in the deposition, Dr. Lester responded in his own words "I mean, I think he would have a difficult time of really sustaining an activity and stuff."
 {¶ 33} Perhaps most telling on the issue of equivocation is Dr. Lester's response to the final question of the deposition. By his response, Dr. Lester indicates that he agrees with counsel's assertion that "it would be very unlikely that he could do any work, but that there might — but under some sort of some certain limited circumstances, you didn't want to rule that out."
 {¶ 34} Clearly, under the circumstances described above, Dr. Lester's medical opinions are not evidence upon which the commission can rely in adjudicating relator's PTD application. Because the commission abused its discretion in determining relator's residual medical capacity, this court need not review the commission's consideration of the nonmedical factors. State ex rel. Corona v. Indus. Comm. (1998), 81 Ohio St.3d 587,589.
 {¶ 35} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its SHO's order of November 6, 2001, that denied relator's PTD application, and, after eliminating Dr. Lester's medical opinions from further evidentiary consideration, enter a new order that adjudicates the PTD application.